UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**TIM GOODEN,**

   Plaintiff,

v.                                                                           No. 4:24-cv-00750-P

**LHOIST NORTH AMERICA
OF TEXAS, LLC,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 64. Having considered the briefing and evidence of record, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Defendant Lhoist North America of Texas, LLC ("Lhoist") is a subsidiary of a Belgium-based company engaged in the production and sale of lime products. ECF No. 73 at 1. Lhoist operates nine terminals in Texas, where it mixes and distributes lime, and employs hundreds of semi-truck drivers to transport its products throughout the state. ECF No. 73 at 2.

Lhoist hired Plaintiff Tim Gooden, who is Black, as a truck driver in 2005 and assigned him to its Hurst, Texas terminal. ECF No. 73 at 2. Gooden remained employed with Lhoist for approximately eighteen years. ECF No. 73 at 2. During his employment, Gooden primarily drove routes between Clifton and Hurst, Texas, and occasionally hauled longer interstate loads. ECF No. 73 at 2.

Lhoist drivers routinely worked overnight or extended shifts depending on route demands. ECF No. 73 at 6. Lhoist maintained written safety policies addressing driver fatigue and instructed drivers to rest as necessary to comply with company policies and federal safety

regulations. ECF No. 73 at 6, 27. Drivers were compensated for logged work time, and Lhoist monitored compliance with timekeeping, safety, and operational policies. ECF No. 73 at 6.

At various points during his employment, Gooden proposed operational changes and suggested that he assume additional responsibilities intended to supplement existing operations. ECF No. 73 at 7. These suggestions included assisting with dispatch coordination, training, and preparatory tasks. ECF No. 73 at 7. Lhoist did not create permanent positions, managerial roles, or full-time assignments based on these proposals. ECF No. 65 at 6–7. Certain operational adjustments were implemented as part of routine supervisory discretion, but the additional tasks did not involve a change in title, compensation, or supervisory authority. ECF No. 65 at 6–7.

In or around 2021, Lhoist experienced changes in terminal management and reassessed driver assignments and operational needs. ECF No. 73 at 6–7. As part of that reassessment, certain tasks previously performed by Gooden—such as interstate hauling and specialized testing activities—were reassigned based on business needs and supervisory judgment. ECF No. 65 at 17. Lhoist continued to employ Gooden as a truck driver following these changes. ECF No. 73 at 7.

In April 2023, Gooden raised concerns with management regarding workplace issues, including scheduling and timekeeping practices. ECF No. 73 at 8. These complaints did not reference race or allege unlawful discrimination. ECF No. 73 at 8; ECF No. 65 at 12. Later in mid-2023, Gooden discussed perceived unfair treatment with management personnel. ECF No. 65 at 10–11. Lhoist addressed these concerns through routine supervisory channels. ECF No. 65 at 11–13.

In August 2023, Lhoist investigated Gooden for timekeeping violations, including extended periods of non-work activity while on the clock. ECF No. 65 at 13. Lhoist determined that Gooden had accumulated approximately sixty hours of unauthorized time. ECF No. 65 at 13. On August 25, 2023, Lhoist suspended Gooden pending the investigation. ECF No. 73 at 9. Lhoist offered Gooden a Last Chance Agreement addressing policy compliance expectations. ECF No. 73 at

10. Gooden proposed revisions to the agreement, which Lhoist ultimately declined. ECF No. 73 at 11. Gooden returned to work on September 11, 2023. ECF No. 73 at 11.

On August 28, 2023—after his suspension—Gooden filed a charge of discrimination with the Equal Employment Opportunity Commission. ECF No. 73 at 10.

In October 2023, Gooden applied for the position of Regional Terminal Operations Manager. ECF No. 65 at 20. The position required multi-site management experience, supervisory responsibility, and prior leadership over terminal operations. ECF No. 65 at 20. Lhoist selected Chris Clark, who possessed extensive experience managing terminal operations across multiple facilities and supervising employees. ECF No. 65 at 21. Gooden did not possess comparable management or multi-site supervisory experience. ECF No. 73 at 19–20.

In April 2024, Lhoist investigated a safety incident involving Gooden's use of a tow strap on company equipment. ECF No. 73 at 13–14. Lhoist concluded that Gooden failed to follow safety procedures and engaged in inappropriate conduct during a subsequent meeting regarding the incident. ECF No. 65 at 22–23. At the time, Gooden remained subject to disciplinary expectations following the prior Last Chance Agreement. ECF No. 65 at 24. On April 11, 2024, Lhoist terminated Gooden's employment citing his the violations and conduct concerns. ECF No. 65 at 24.

Gooden sued Lhoist for racial discrimination and retaliation claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981, initiating this action on August 7, 2024. ECF No. 1. Gooden filed a Second Amended Complaint on March 21, 2025, which is the live complaint in this case. ECF No. 27. After discovery, Lhoist moved for summary judgment on all claims on October 31, 2025. The Motion is now ripe for review.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of

3

the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" if it would affect a case's outcome. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In assessing whether summary judgment is appropriate, the Court views evidence in the light most favorable to the nonmovant. *Cunningham v. Circle 8 Crane Servs., LLC*, 64 F.4th 597, 600 (5th Cir. 2023). The Court may rely on any evidence of record but need only consider those materials cited by the parties. FED. R. CIV. P. 56(c)(1)–(3); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (noting summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). But the Court need not mine the record for evidence supporting the nonmovant; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Defendant seeks summary judgment on Plaintiff's race discrimination and retaliation claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981. The Court takes both claims in turn.

### A. Section 1981 Race Discrimination Claims

Defendant Lhoist counters that Gooden cannot establish a prima facie case of race discrimination. Specifically, Lhoist contends that Gooden cannot show that he suffered an actionable adverse employment action or that he was treated less favorably than similarly situated employees outside his protected class.

A § 1981 race discrimination claim based on circumstantial evidence is analyzed under the *McDonnell Douglas* burden-shifting framework. *Corp. v. Green*, 411 U.S. 792 (1973); *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 305 (5th Cir. 2020) (citing *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016)).

4

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of race discrimination. *Rogers*, 827 F.3d at 408. If the plaintiff does so, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *Id*. "If the employer satisfies this burden, the presumption of discrimination drops out of the picture, and the employee must offer some evidence that" the employer's reason was pretextual, or that the plaintiff's protected characteristic was a "motivating factor" for the alleged discrimination. *Id*. (citations and internal quotations omitted).

To establish a prima facie case, Gooden must show that he (1) is a member of a protected class; (2) was qualified for the position sought; (3) suffered an adverse employment action; and (4) was replaced by someone outside his protected class or was treated less favorably than similarly situated employees outside his class. *Haire v. Bd. of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

The first element is undisputed. Gooden is a Black man and thus a member of a protected class. The remaining elements are contested.

### 1. The 2017 Role, the 2020 Role, and the Fleet Lead Role

Gooden identifies seven alleged adverse employment actions: (1) the employment disputes concerning the 2017 role; (2) the 2020 role; (3) the Fleet Lead role; (4) Lhoist's decision not to promote him to Regional Terminal Operations Manager; (5) alleged pay disparities; (6) his suspension and placement on a Last Chance Agreement; and (7) his termination. The Court takes the first three together.

#### *a. Statute of Limitations*

To begin, Lhoist argues that the claims based on the 2017 and 2020 roles are time-barred. Section 1981 contains no express statute of limitations, so courts apply the most closely analogous state limitations period. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003). Generally, in Texas, when a § 1981 claim is brought, the two-year statute of limitations for personal injury actions controls. *See Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988).

5

Some courts, however, apply a four-year statute of limitations to claims arising under the 1991 amendments to § 1981, which cover post-contract-formation conduct such as termination. *Teamah v. Applied Materials, Inc.*, 715 Fed. Appx. 343, 346 n.13. (5th Cir. 2017).

Here, the 2017 position was proposed and filled before 2017, and the 2020 position was proposed in 2020. ECF No. 65 at 7. Gooden filed his first complaint on August 7, 2024. ECF No. 1. Accordingly, both claims are time-barred under either a two-year or four-year limitations period.

### b. Lack of Actionable Adverse Employment Action

But even assuming *arguendo* that these claims are timely, the 2017 and 2020 roles are not actionable under § 1981. *See Hamilton v. Dall. Cty.*, 79 F.4th 494, 505 (5th Cir. 2023) (explaining that Title VII does not permit liability for de minimis workplace trifles); *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 665 (N.D. Tex. 2023) (requiring more than a de minimis harm). A plaintiff must show some harm affecting an identifiable term or condition of employment. *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024). In other words, the challenged action must meaningfully alter the terms of employment and injure the employee. *Fleming v. Methodist Healthcare Sys. Of San Antonio, Ltd. L.L.P.*, No. SA-21-CV01234-XR, 2024 WL 1055120, at *12 (W.D. Tex. Mar. 11, 2021). In short, the plaintiff must show a disadvantageous change in an employment term or condition.

Here, the 2017 and 2020 roles were temporary assignments involving additional responsibilities intended to supplement hours. They were not full-time positions. Gooden offers no evidence that the failure to assign these responsibilities altered the terms or conditions of his employment or caused him injury.

The same is true of the Fleet Lead role. Gooden describes that role as arriving early to prepare for the day before other drivers arrived. *See* ECF No. 65 at 5–8. But this, too, involved additional responsibilities rather than a separate job or promotion. The employee assigned these duties received no pay increase, held no managerial title, and exercised no supervisory authority. Therefore, the failure to assign these tasks

6

does not constitute an adverse employment action. *See Hamilton*, 79 F.4th at 505.

Because these alleged actions are either not timely or not actionable, Gooden fails to establish a prima facie case as to the 2017 role, the 2020 role, and the Fleet Lead role.

### 2. Failure to Promote to Regional Terminal Operations Manager

Gooden next alleges that Lhoist denied him a promotion to Regional Terminal Operations Manager in 2023. Although he satisfies the protected-class element and alleges an adverse employment decision, he fails to establish the remaining elements of a prima facie case.

The Regional Terminal Operations Manager position was several levels above Gooden's role as a truck driver. Gooden presents no evidence that he possessed the qualifications required for the position beyond his experience as a driver and his years of service. As the record demonstrates, that showing is insufficient for the managerial role he sought.

Gooden also has not demonstrated that Lhoist treated a similarly situated employee outside his protected class more favorably. The selected candidate, Chris Clark, is White. But Clark is not similarly situated. He had 17 years of terminal management experience and additional experience as a production supervisor, maintenance planner, and operations manager. ECF No. 65 at 20. Because Clark was significantly more qualified, he is not a valid comparator.

Gooden, therefore, fails to establish a prima facie case of race discrimination based on the failure to promote.

### 3. Alleged Pay Disparities

Gooden also alleges that he was paid less than similarly situated White drivers. He identifies Blendon and Payne as comparators. The record shows, however, that neither worked at the same terminal as Gooden. As a result, they are not similarly situated.

Gooden offers no evidence that non-Black employees performing the same job with the same responsibilities were paid more. This claim fails at the prima facie stage.

### 4. Suspension, Last Chance Agreement, and Termination

Gooden further alleges discrimination arising from his suspension, placement on a Last Chance Agreement, and termination. Each claim fails for the same reason: Gooden has not identified a similarly situated non-Black employee who received more favorable treatment.

However, "the [F]ifth Circuit defines 'similarly situated' narrowly." *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 735 (S.D. Tex. 2014) (citation omitted). Similarly situated individuals must be 'nearly identical' and outside the plaintiff's protective class. *Id.* at 735–36 (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). Here, Gooden does not provide evidence of another individual with a nearly identical history of misconduct: such as an individual who took 60 hours worth of unauthorized breaks on the clock who received preferential treatment or was not disciplined. His general assertions do not satisfy the requirements to make a prima facie showing.

The termination claim fails for the same reason. At the time of his termination, Gooden was returning from a suspension and on a Last Chance Agreement for stealing company time. He was approached about a safety issue. Lhoist asserts that when confronted, Gooden was upset and became aggressive. He started yelling, called the supervisor a liar, accused the supervisor of trying to get employees fired, and accused the supervisor of belittling employees. Lhoist sent Gooden home and later terminated him.

Gooden presents evidence of another employee, Mr. Kalahiki, as someone similarly situated. Kalahiki falls outside of Gooden's protected class. However, Kalahiki is not similarly situated. He does not share the nearly identical disciplinary history. ECF No. 73 at 22. For example, the evidence presented does not show that Kalahiki was also on a Last Chance Agreement, that he was previously suspended, or that he reacted similarly when approached about the tow strap. ECF No. 73 at 22. Gooden contends that they are similarly situated because they both

tied a tow strap to the front of their respective trucks, in contravention of company policy. However, participating in the same action does not make individuals similarly situated. Kalahiki is not "nearly identical," especially when considering Gooden's disciplinary history, and thus cannot be used to demonstrate preferential treatment.

Ultimately, Gooden fails to demonstrate a prima facie case of racial discrimination in each instance because: (1) the failure to promote Gooden to take on extra responsibilities is not an adverse employment action, (2) Gooden has not demonstrated that he was qualified for the Regional Terminal Operations Manager role, and (3) or shown that he was treated less favorably than someone similarly situated in regards to his suspension and termination.

### B. Section 1981 Retaliation Claims

Lhoist also challenges the existence of a causal connection needed to establish a prima facie case for retaliation. Even if Gooden can show a causal connection, Lhoist argues there is a legitimate, non-retaliatory reason for Gooden's termination.

Retaliation claims under Title VII and § 1981 are both also analyzed under *McDonnell Douglas*. *See Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). To establish a prima facie case, Gooden must show that (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See id.* A protected activity under a § 1981 retaliation claim is either (1) opposing racial discrimination or (2) participating in an investigation, proceeding, or hearing. *Yarbrough v. SlashSupport, Inc.*, 152 F.4th 658, 667 (5th Cir. 2025).

After a prima facie showing is made, the burden shifts to Lhoist to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If Lhoist can demonstrate such a reason, the burden shifts back to Gooden, who must then demonstrate "substantial evidence" that Lhoist's articulated legitimate reason was a pretext for retaliation. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 657 (5th Cir. 2020).

Gooden alleges retaliation based on the same seven actions underlying his discrimination claims.

### 1. The 2017 role, the 2020 role, and the Fleet Lead Role.

As with the discrimination claims, the alleged retaliation tied to the 2017 role, the 2020 role, and the Fleet Lead role fails. As discussed above, two of these claims are time-barred. But even assuming *arguendo* that they are not, Gooden fails to establish a prima facie showing for all three positions. He points to not being assigned the additional responsibilities in the 2017, 2020, or Fleet Lead roles. However, at that time, Gooden had not engaged in protected activity before 2020. Gooden's earliest complaint of discrimination was in July 2023. Years after the alleged retaliation. Thus, Gooden has not shown that he faced retaliation regarding the alleged positions he created.

The same is true of Gooden's pay-disparity claim. Gooden alleges that he was paid less in retaliation. However, Gooden had not participated in protected activity at the time that the pay disputes arose, which was before he filed an EEOC charge in August 2023. He does not offer any evidence that his pay changed after filing an EEOC charge in August 2023. This claim fails at the prima facie stage.

### 2. Failure to Promote to Regional Terminal Operations Manager

Next, Gooden also fails to show that there was retaliation for Lhoist's decision not to promote him to Regional Terminal Operations Manager in October 2023. This was after he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Lhoist in August 2023. This, taken together, satisfies the first two elements of a prima facie showing of retaliation. Gooden participated in opposition activity, and he was subject to an adverse employment action. As the Court explains above, it remains skeptical that Gooden was subject to an adverse employment action, but even assuming arguendo he was, he still fails to satisfy the other elements of a prima facie case. Namely, Gooden has not demonstrated a causal link between the protected activity and the adverse employment action.

To establish a causal link between the defendant's conduct and the plaintiff's injury, the plaintiff must show that harm would not have occurred but for the defendant's conduct. *U. of Tex. Southwestern. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013). A causal link between the defendant's conduct and the plaintiff's injury can be established by temporal proximity, such as the protected act and the adverse employment action being very close in time to establish causation by timing alone. *Porter v. Houma Terrebonne Housing Authority Bd. Of Com'rs*, 810 F.3d 940, 948 (5th Cir. 2015). Gooden filed his EEOC charge two months before he was not promoted to Regional Terminal Operations Manager. This establishes temporal proximity between the protected act and the adverse employment action. Therefore, the burden shifts to Lhoist to demonstrate a legitimate, non-retaliatory reason.

Lhoist demonstrated such a reason for its decision not to promote Gooden. Lhoist was looking for a candidate with previous multi-site manager experience, as well as management and leadership experience. Lhoist did not move forward with his application because Gooden did not meet the minimum qualifications required for the role. Gooden asserts that he was qualified because he (1) created the aforementioned positions and procedures; (2) had 19 years of truck driving experience for Lhoist; and (3) was a qualified truck driver. He did not offer any evidence that he had experience in management or leadership. The candidate that Lhoist selected, Chris Clark, did meet the job requirements. Lhoist presented evidence that he had (1) 17 years of terminal management experience; (2) experience as a production supervisor, maintenance planner, and operations manager; and (3) managed terminals all over the central part of the southern United States. ECF No. 65 at 21. In short, Lhoist presented sufficient evidence to demonstrate that Gooden was not promoted for his lack of experience and that it picked a more qualified candidate.

Because Lhoist has shown a legitimate, non-retaliatory reason, the burden shifts back to Gooden, who must then demonstrate "substantial evidence" that Lhoist's reason was a pretext for retaliation. An employee establishes pretext by showing that the adverse actions would not have occurred but for the employer's retaliatory reason for the action. *Nassar*,

11

570 U.S. at 346–47. Gooden fails to do so here. He has presented no evidence that he was qualified for the job or that Mr. Clark was not qualified. (ECF. No. 71)

### 3. Suspension, Last Chance Agreement, and Termination

Finally, Gooden points to his suspension and placement on a Last Chance Agreement as retaliatory. Here, Gooden's claims fail again because he had not engaged in any protected activity before he was suspended on August 25, 2023.

Gooden references a series of complaints that he made before his suspension as protected activity. He complained to management about a hostile work environment and "[p]laying with [his] time." ECF No. 65 at 10. However, some of these complaints contain no reference to race or any other protected characteristic. They do not allege that Lhoist was engaging in unlawful employment practices. Thus, these complaints are not protected activity. *See Washington v. Nat'l Oilwell Varco, L.P.*, 634 F.Supp 3d. 316, 323 (N.D. Tex. 2022) (holding that vague complaints that do not allege racial animus are not "protected activities"). Gooden's other complaints vaguely reference "retaliation" or a "hostile work environment." But these complaints still lack the specificity required to amount to protected activity. *Davis v. Dall. Indep. Sch. Dist.*, 448 Fed. Appx. 485, 493 (5th Cir. 2022) ("We have consistently held that a vague complaint . . . does not constitute protected activity.").

Gooden also refers to a series of complaints made after he was suspended on August 28, 2023. First, his EEOC charge. Second, Gooden's Reply mentions three different complaints after his suspension on September 8, 14, and 20 of 2023. ECF. No. 73 at 23. These complaints were submitted post-suspension and made in opposition to Gooden's own suspension. Thus, any retaliatory claim based on these complaints fails to show that the desire to retaliate was the but-for cause of the challenged employment action. *Nassar*, 570 U.S. at 352.

Gooden next alleges he was fired in retaliation for participating in protected activity. Gooden participated in protected activity in August 2023 when he failed his EEOC charge. He was terminated eight months later. This satisfies the first two prongs of a prima facie retaliation case.

However, this claim fails on the third prong because Gooden has not demonstrated a causal link between the protected activity and the adverse employment action.

As mentioned above, the plaintiff must show that harm would not have occurred but for the defendant's conduct, and this can be established by the activities being close in time. *Nassar*, 570 U.S. at 346–47; *Porter*, 810 F.3d at 948. Gooden filed his EEOC charge eight months before he was terminated. The Fifth Circuit has held that "a five-month lapse is not close enough, without other evidence of retaliation, to establish the 'causal connection' element." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020). Here, the eight-month period is longer than the five months mentioned in *Lyons*.

Gooden asserts that he submitted another complaint after his suspension, alleging race discrimination, on September 1, 2023. ECF No. 73 at 24. However, this complaint occurred seven months before his termination. Thus, it is also outside the time frame used to establish temporal proximity. Gooden's briefing on this issue is bare and presents no other evidence that his protected activity is the reason for his termination. Thus, he fails to establish the final prima facie prong.

Ultimately, Gooden fails to demonstrate a prima facie case of retaliation in each instance because: (1) he did not engage in protected activity before the employment dispute concerning 2017 role, 2020, role, Fleet Lead role, and the pay discrepancy; (2) he has not demonstrated Lhoist's reason to not promote him to Regional Terminal Operations Manager role was pretextual, and (3) he cannot establish that his protected activity is the causal link for his termination.

## CONCLUSION

For the above reasons, the Court concludes that Summary Judgment should be and hereby is **GRANTED**. Accordingly, Plaintiff's claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **23rd day of January 2026.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE